

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 13, 2007**                        **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| OSCAR FLORES and MARY Z. FLORES, | § | |
| | § | |
| Debtors. | § | CASE NO. 05-92803-DML-13 |
| | § | |
| CITIFINANCIAL AUTO, LTD., | § | |
|     Movant, | § | |
| | § | |
| v. | § | |
| | § | |
| OSCAR FLORES and MARY Z. FLORES, | § | |
|     Debtors-Respondents. | § | |

## MEMORANDUM OPINION

Before the court is a valuation dispute between Debtors (also the "Floreses") and Citifinancial Auto, Ltd. ("Citi") posed in the context of confirmation of Debtors' debt adjustment plan (the "Plan") in their chapter 13 case.[1] On December 21, 2006, the court held a hearing respecting confirmation of the Plan. At that time the court determined that the Plan should be confirmed, reserving for briefing and later decision the issue addressed

---

[1] Debtors' case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). As discussed below, the court does not intend that its opinion will have application in instances where the lien-stripping provision is not applicable pursuant to the unnumbered paragraph added by BAPCPA at the end of section 1325(a) of the Bankruptcy Code (11 U.S.C. §101 et seq.; hereafter, the "Code;" citations below refer to numbered provisions of the Code as amended by BAPCPA, unless otherwise indicated).

in this memorandum opinion. The parties thereafter advised the court that they agreed that there was no need for an evidentiary hearing and that the issue between them was purely one of law.

This matter is a core proceeding subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(L). This memorandum opinion embodies the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 9014 and 7052.

## Discussion

The relevant undisputed facts are that, Citi loaned the Floreses money to purchase a 2001 Chevrolet C1500 pickup truck (the "Vehicle"). Included in the loan was $1,682.50 advanced to purchase an extended service warranty (the "Warranty"). The parties agree that Citi is undercollateralized. They also agree as to the value of the Vehicle,[2] except that Citi contends that, in addition to a value as calculated in accordant with *Gray*, its collateral includes the Warranty and, therefore, the discounted present value of the Warranty should be added to its secured claim. Debtors disagree, asserting, first, that the agreement underlying the Warranty is illegible,[3] and so cannot be relied upon; thus, Debtors insist, notwithstanding the supposed absence of any issues of fact, Citi has not proved its case. Second, Debtors argue that Citi did not perfect a security interest in the Warranty.

---

[2]   Determined in accordance with this court's opinion in *In re Gray*, 285 B.R. 379 (Bankr. N.D. Tex. 2002).

[3]   The agreement underlying the Warranty was never introduced into evidence and is made part of the record in this case only through being attached to a brief filed by Citi. The copy provided to the court might be decipherable with the aid of a magnifying glass, but the court's vision, even augmented by spectacles, is inadequate to the task. However, given the court's disposition of this matter, fully understanding the content of the Warranty is not necessary. The court assumes that the Warranty would be honored as to the Vehicle, including if the Vehicle were transferred.

The sole issue posed to the court is whether, by reason of the Warranty, Citi's secured claim should be greater than the value of the Vehicle. The parties have posed this issue as one the answer to which depends on whether Citi perfected a security interest in the Warranty.[4] The court, however, does not agree that this should be the basis for its decision.

Under *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 957 (1997), pursuant to section 1325(a)(5) of the Code, in order for Debtors to retain the Vehicle, in satisfaction of Citi's secured claim the Plan must provide it with a stream of payments having a present value equal to the replacement value of the Vehicle. The replacement value of the Vehicle takes account of what a buyer in the Debtors' situation would pay for a vehicle of like age and condition.[5]

The Vehicle, as it presently exists, carries an extended warranty — that is, the Warranty is an attribute of the Vehicle. The Warranty cannot be transferred separately from the Vehicle,[6] and if the Vehicle were transferred, the Warranty would pass with it just as would an original factory warranty. Thus, if Debtors replaced the Vehicle as it presently is, the replacement would include an extended warranty having identical terms to those now in place pursuant to the Warranty. Viewing the Warranty in this fashion is

---

[4] The parties cited cases concerning security interests in service and insurance contracts on the vehicles. The cases are distinguishable on the basis that those contracts had value independent of the vehicle, whereas in this case the Warranty is completely pre-paid and bound to the vehicle. *See In re White*, 352 B.R. 633, 639 (Bankr. E.D. La. 2006); *In re Grant*, 242 B.R. 800, 804 (Bankr. D. N.H. 1999); *In re Smith*, 167 B.R. 895, 898 (Bankr. E.D. Mo. 1994).

[5] *See In re Marquez*, 270 B.R. 761, 768 (Bankr. D. Ariz. 2001) (citing *Rash*, 520 U.S. at 965 n. 6) (determining replacement value requires adjustments based on features and conditions of the vehicle); *Rash*, 520 U.S. at 959 n. 2.

[6] Citi argues that it could cash in the remaining value of the Warranty. The court is able to discern a provision dealing with application by Citi to Debtors' debt of refunds from service contract, but the Warranty is not sufficiently readable for the court to determine that a refund is in fact possible. It any case, the possibility of a refund attributable to the Warranty does not change the method of valuation required by *Rash*.

consistent with the rule that improvements to collateral that become part of that collateral (such as a paint job) redound to the benefit of the lienholder.[7]

That the Warranty is inseparable from the Vehicle and so is subject to Citi's lien,[8] however, does not mean that Citi is entitled, as it urges, to increase its secured claim by the discounted cost of the Warranty. *Rash* requires Debtors to pay the replacement cost of the Vehicle. There is no evidence before the court that the Warranty added value to the Vehicle above the value calculated as provided in *Gray*. Absent such evidence, the court cannot conclude that the Warranty justifies adjustment to that value calculation.

For the foregoing reasons, the Plan should be confirmed based on a value of the Vehicle calculated as provided in *Gray*. Counsel to Debtors is directed to submit such orders as are appropriate to confirm the Plan and effect the substance of this memorandum opinion.

# # # END OF OPINION # # #

---

[7] *See In re Oaks Partners, Ltd*, 141 B.R. 453, 459 (Bankr. N.D. Ga. 1992) (noting that debtor's proposed capital improvements to the real property would increase the value of the collateral, to the benefit of the mortgagee); *Texas Hydraulic & Equip. Co. v. Assocs. Discount Corp.*, 414 S.W.2d 199, 201 (Tex. Civ. App.—Austin, 1967, no writ) (upholding trial court's determination that replacement equipment added to a truck had become part of the truck through accession, benefiting the lienholder).

[8] The court does not here conclude that similar facts would enhance the position of an oversecured creditor or an undersecured creditor not subject to lien stripping. Citi's secured claim is to be calculated based on the replacement value of the Vehicle. Were the claim to be determined in another fashion (e.g., based on the amount loaned to buy a car), the value of an extended warranty would not necessarily be part of the calculation. Likewise, the court expresses no opinion as to whether, if Debtors rather than Citi had advanced the price of the Warranty, that would affect the result in this case.